INHABITANTS OF BELMONT *vs.* INHABITANTS OF MORRILL.

Waldo.    Opinion April 1, 1879.

*New trial.  Public acts.  Judicial notice.  Constitutional law.  Exceptions.*

A new trial will be granted, where the court ruled that the rights of the parties in a cause depended upon the interpretation of a statute which, as afterwards discovered, but at the time unknown to all concerned, had been repealed.

The repeal of a section of an act, incorporating a town, will be noticed by the court as a public act without proof thereof.

An act, dividing the territory of one town into two towns, fixed the liability of such towns for the support of paupers having a settlement upon the common territory.  The rule was altered by a legislative act, not affecting any person then chargeable as a pauper:  *Held,* such act is constitutional.

Exceptions, regularly allowed and duly certified, will be considered by the court, although they are not minuted by the clerk as filed at the term when taken.

ON EXCEPTIONS.

ASSUMPSIT for pauper supplies to Harriet Childs, wife of Robert Childs.

The question in litigation was whether the pauper's husband, Robert Childs, had his legal settlement at the time of his decease in the town of Belmont, or in the town of Morrill.  The writ was dated February 12, 1877.

Plea, general issue.

It was admitted that the pauper fell into distress at the time stated in the writ, and that the supplies named therein were furnished by the plaintiffs.  There was no testimony tending to show that the pauper, Harriet Childs, or her husband, Robert Childs, had ever become chargeable as paupers prior to the winter of 1875.

The testimony tended to show that Robert Childs had a derivative settlement from his father in that part of the original town

of Belmont which is embraced in the town of Morrill, under the act of March 3, 1855, dividing the town of Belmont, and incorporating the northerly part of it into a new town by the name of Morrill.

There was testimony tending to show that prior to the act of division, Robert Childs had acquired a legal settlement in his own right in that part of the original town which is now Belmont. But this point was controverted, and there was testimony tending to show the contrary.

There was no testimony tending to show that he had acquired a legal settlement in any place since the act of division.

Defendants offered testimony, and several witnesses testified to facts, tending to show that at the time of the passage of said act of division of the town of Belmont, said Robert Childs was absent from said town, and had separated from his family, having no home or dwelling place with them ; and that his last dwelling place in the original town of Belmont was not in that part of it which was incorporated into the new town of Morrill, but was in that part of it which remained, and still is the town of Belmont.

On this subject the presiding Judge charged the jury as follows :

" It is claimed here that under the law as we have it, Robert Childs would acquire his settlement on the division of the town of Belmont, upon that territory where he last resided, he having been absent from Belmont at the time that act of incorporation of Morrill was passed. Were there no other law than our general pauper law applicable to this case, that would undoubtedly be true, but it is competent for the legislature to provide for the settlement of paupers when they make a division of a town, and provide as to which town incorporated out of a given piece of territory shall take the paupers, and divide them as they see fit. Sometimes there is no provision made in the act of division, and sometimes there is. It appears that in this case there was a provision made as to the support of paupers, not only of all those paupers who at the time were chargeable, but all who should afterwards become chargeable. There have been several cases of division of towns in this state where the act has provided for the support of paupers subsequently to become chargeable, and have used certain lan-

guage which has received a judicial construction. Upon examining the language in this case I find it varies somewhat from those, and yet perhaps not so much but what I may apply the same principles that were applied to those, to this one. Therefore I follow the decisions as I understand them ; and for the purposes of this trial, I instruct you that the general pauper law in this respect does not apply, but that the provision of the law in the act of incorporation of the town of Morrill and division of Belmont does apply. Of course we have got to go back to the general law to get what is meant by a settlement. It is said in the dividing act that each town is to take all the paupers to become chargeable, who have acquired a settlement upon that part of the territory which may fall within the one or the other ; that is to say, if the pauper had acquired a settlement upon that part of the territory which is now within the territory of Belmont, then he would be supported by Belmont; if on the other hand, he had acquired a settlement upon that part of the territory which falls within the town of Morrill, then he would be supported by Morrill. That word, settlement, has a technical meaning and precisely that meaning which I have given to you, that his connection or relation to that territory would be such that in case he fell into distress he would be entitled to be supported by that town. . . . . Hence you see the principles of law apply just the same as though there were two separate and distinct towns at the time, and I give you the law with that view."

The attention of the court was not called to the statute repealing the provision relating to the support of paupers in the act dividing Belmont and incorporating Morrill, and no question was raised at the trial in regard to it.

The verdict was for the plaintiffs for $148.21, and defendants alleged exceptions.

*W. H. Fogler,* for the plaintiffs.

*A. P. Gould & J. E. Moore,* for the defendants.

PETERS, J. In this case the court ruled that the rights of the parties depended upon a section of a statute which (as afterwards discovered) had been repealed. We feel sure that the fact of

repeal was not known to any of the parties concerned. It is not strange that it was forgotten. The act was passed, in 1855. The section referred to was repealed in 1861, and it probably had no practical application before 1875. The plaintiffs contend that the ruling must stand, because the court was not apprised of the statute by counsel when the cause was tried. The rule of practice, that a party who does not take a point in the trial should not be allowed to take it afterwards, was discussed at some length in *Eaton* v. *New England Tel. Co.*, 68 Maine, 63. It was there conceded that the rule might in possible cases admit of exception. Most rules are subject to exceptions. Whether the rule can apply to a case like the present we need not take the trouble to determine, because we think, if it can, this should be an exception to the rule. The error was an innocent one upon the part of the parties. The ruling misdirected the jury, and the case suffers injustice unless relief can be granted. The consequences might be much greater than would ordinarily attach to an erroneous verdict where the same sum of money was directly involved. As the judgment will bind both towns in fixing the settlement of the pauper, many unexpected claims may in the future be dependent upon it. It was said by the court in Massachusetts ( *Wait* v. *Maxwell*, 5 Pick. 220): " We are satisfied, however, that the verdict has been returned upon a wrong principle, and that it is within the discretion of the court to grant a new trial, notwithstanding the point on which we decide was not distinctly raised at the trial." The court granted a new trial there. For the same reason, and in an extreme case, we grant a new trial here.

The plaintiffs contend that the act of repeal is not a public act, and that therefore the court without proof could not have taken notice of it. By paragraph 26 of. § 4, c. 1, R. S., acts of incorporation are to be regarded as public acts. We think an act in addition to an act of incorporation, becoming, as this is, a part thereof, is a public act also. Such acts are generally regarded as public acts, irrespective of the statute regulating the construction of legislative acts. *New Portland* v. *New Vineyard*, 16 Maine, 69. Whar. Ev. § 293.

We do not agree with the counsel for plaintiffs that the act of

repeal is unconstitutional. It related to no person then charge-able. It changed a rule only. No one could foresee which town would be most affected by it in the future. It abolished a special, and supplied the general, rule. *Appleton* v. *Belfast,* 67 Maine, 579.

A point is made against the exceptions that they are not min-uted as filed at the term when taken. But they are regularly allowed as of that term, and duly certified, and that presents them to us.

*Exceptions sustained.*

APPLETON C. J., DANFORTH, VIRGIN and LIBBEY, JJ., con-curred.